```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re
          LISA M. GAWRONSKI,                                    08-14853 B

                    Debtor                                      DECISION & ORDER
------------------------------------------------------
MARK J. SCHLANT, TRUSTEE,

                    Plaintiff

          v.                                                    AP 09-1012 B

ROBERT BARTOLUCCI,

                    Defendant
------------------------------------------------------
```

          Zdarsky, Sawicki & Agostinelli LLP
          Mark J. Schlant, Esq., of Counsel
          404 Cathedral Place
          298 Main Street
          Buffalo, New York 14202
          Attorneys for the Trustee/Plaintiff

          Barry H. Sternberg, Esq.
          4245 Union Road
          Cheektowaga, New York 14224
          Attorney for Defendant

Bucki, Chief U.S.B.J., W.D.N.Y.

In this adversary proceeding, the Chapter 7 trustee seeks to recover allegedly preferential payments that the debtor made to her brother during the year immediately prior to the commencement of bankruptcy proceedings. On cross motions for summary judgment, the parties contest the application of 11 U.S.C. §547(c)(2), which allows a defense for the payment of debts incurred in the ordinary course of the parties' financial affairs.

Prior to the filing of her bankruptcy petition, Lisa Gawronski and her husband signed five promissory notes as evidence for loans advanced to them by Lisa's brother, Robert Bartolucci. Specifically, these instruments included a note dated

December 1, 1999, for repayment of $31,742.51; a note dated November 1, 2000, for repayment of $11,138.62; a note dated December 1, 2000, for repayment of $25,063.75; a note dated April 1, 2001, for repayment of $13,926.05; and a note dated September 13, 2002, for repayment of $14,614.16. Pursuant to the terms of these notes, Mr. and Mrs. Gawronski agreed to repay Robert Bartolucci at a collective monthly rate of $431.57. Mr. Bartolucci concedes that his sister and brother-in-law made these payments regularly during the year prior to the filing of Lisa's bankruptcy petition on October 31, 2008. During the period starting with November of 2007, therefore, Robert Bartolucci received payments totaling $5,178.84.

The trustee commenced the present adversary proceeding to recover the sum of $5,178.84 from Robert Bartolucci as a preference. Subsequently, however, the parties stipulated that Mrs. Gawronski and her non-debtor husband would each be deemed to have advanced one-half of the payments. Thus, the trustee now limits his preference claim to $2,589.42. In seeking summary judgment for this later amount, the plaintiff has demonstrated the absence of any genuine issue regarding the necessary elements of this cause of action, as stated in 11 U.S.C. §547(b). Thus it appears that the debtor transferred property to her brother on account of an antecedent debt and at a time when Mrs. Gawronski was insolvent. Further, she made the transfer to her brother, who qualifies as an insider under 11 U.S.C. §101(31), so that the applicable preference period is extended to include the entire year prior to the filing of Gawronski's bankruptcy petition. Finally, the payment enabled Bartolucci to receive more than he would otherwise have received in this proceeding under Chapter 7 of the Bankruptcy Code.

In his cross motion for summary judgment, Bartolucci does not dispute the preferential nature of his sister's payments. Rather, he asserts the defense of 11 U.S.C. §547(c)(2), which provides as follows:

> (c) The trustee may not avoid under this section a transfer – . . .(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and

>  the transferee, and such transfer was – (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms.

Bartolucci contends that because family members routinely loan money to one another, both the loans to Lisa Gawronski and their repayment were made in the ordinary course of the financial affairs of the parties as brother and sister. The trustee responds that this relationship is insufficient to establish an ordinary course of activity, and that the size and character of the loans indicate extraordinary transactions.

## Discussion

The defense of section 547(c)(2) requires a demonstration of the ordinary character of activity at each of two stages, namely the making of the loan and the making of repayment. In the present instance, during the year prior to Lisa's bankruptcy filing, Mr. & Mrs Gawronski made consistent monthly payments of $431.57, an amount that represented the sum of moneys due and payable to Robert Bartolucci under all of the outstanding notes. These facts suggest persuasively that payments were made within the ordinary course of the financial affairs of both borrower and lender. This conclusion does not determine the outcome, however, because the defendant must also establish ordinary course with respect to the creation of the obligation.

Although the trustee carries the burden of proof with regard to the essential elements of a preference as defined by section 547(b) of the Bankruptcy Code, the defendant carries the burden to prove the defenses in section 547(c). *Lawson v. Ford Motor Co. (In re Roblin Industries, Inc.)*, 78 F.3d 30, 43 (2nd Cir. 1996). In the present instance, for purposes of section 547(c)(2), the undisputed facts preclude a finding that the debtor incurred a debt in the ordinary course of her and her brother's financial affairs. Altogether, Lisa Gawronski and her husband borrowed $96,485.09 from Robert Bartolucci. These loans were extraordinary from both an absolute and a relative perspective. In amount, the loans were significant and far exceeded the size of a

common family transaction.  Relative to the debtor's personal financial circumstances, they fall beyond the ordinary for at least three reasons.

First, the principal obligation exceeded the equity value of the debtor's assets.  In schedules filed with her bankruptcy petition, Mrs. Gawronski listed ownership of real and personal property having a value of $112,861.  After deducting the value of outstanding liens, however, the net equity of these assets totaled less than $5,000.  Thus, the original indebtedness to Robert Bartolucci was more than 19 times greater that the debtor's equity interests as of the date of bankruptcy filing.  In amended schedules, the debtor reported that as of the petition date, she still owed to her brother the sum of $55,727.45, a balance more than eleven times greater than her total net worth.

Second, the debtor's obligation to her brother represented more than half of her entire unsecured debt.  As amended, the debtor's schedules show total unsecured debt of $95,263.45, of which more than 58 percent was owed to Robert Bartolucci.

Third, under the loan agreements, Mrs. Gawronski committed to apply a significant portion of her personal and family income to repayment of the loans from her brother.  Together, these loans required payment of $431.57 each month.  This sum represented more than a quarter of the $1,650.53 that the debtor reported in the bankruptcy schedules as her personal net monthly income.  Further, the payment accounted for almost ten percent of the debtor's total net family income, including that of her husband, in the total scheduled amount of $4,389.01 per month.

From each of these perspectives, Lisa Gawronski had incurred a debt so large that it fell outside the ordinary course of her financial affairs.  Despite carrying the burden to prove ordinariness, the defendant offered no evidence to show that her bankruptcy schedules depicted a financial condition materially different from circumstances at the time that the loans were made.  The court will therefore rely upon those

schedules, and based on those schedules, we must conclude that the loans from Robert Bartolucci were made other than in the ordinary course of the debtor's financial affairs.

To benefit from the defense of section 547(c)(2), a defendant must show that the underlying debt was incurred in the ordinary course of the business or financial affairs of both the debtor and the transferee. Even if one could interpret the facts to recognize a loan within the ordinary course of the debtor's financial affairs, Bartolucci has presented no evidence that he extended credit within the ordinary course of his own business or financial affairs. Without something more, the mere existence of a family relationship will not establish an ordinary course. Quite to the contrary, family relationships may even suggest motivations for a loan outside the ordinary course of the lender's financial affairs. In the present instance, therefore, Bartolucci's status as a sibling cannot absolve, but will reinforce the need for proof of the lender's ordinary course of financial activity. Having offered no such evidence, the defendant fails in this further respect to carry his burden of proof.

The undisputed facts of this case fail to show payment on loans incurred in the ordinary course of the financial affairs of either borrower or lender. Hence, the defendant may not avail himself of the defense of 11 U.S.C. §547(c)(2). Accordingly, the defendant's cross motion for summary judgment is denied. Because Mr. Bartolucci has offered no other defense to the trustee's cause of action to recover a preference, the court will grant the trustee's motion for summary judgment. Judgment will therefore be rendered for the amount of $2,589.42, with interest from the date of the trustee's complaint, and together with the costs of this proceeding.

So ordered.

Dated:  Buffalo, New York          /s/ CARL L. BUCKI
        August 21, 2009            Chief U.S.B.J., W.D.N.Y.